THE PEOPLE *ex rel.* John A. Black *et al.* Appellants, *vs.* T. D. SULLIVAN *et al.* Appellees.

*Opinion filed October 28, 1910—Rehearing denied Dec. 7, 1910.*

1. ELECTIONS—*ballot for township high school election should not be ambiguous.* While the law does not prescribe any form for the ballot in an election upon the question of establishing a township high school, yet such ballot, whether prepared and furnished by the election officers or the voters themselves, must be in such form as to show with reasonable certainty how the voter intended his ballot to be counted.

2. SAME—*when ballot is ambiguous.* A ballot reading "For or against establishing a Township High School," etc., followed by the words "Yes" and "No" in small squares, with a blank square for the voter's cross opposite each of such words, is ambiguous and uncertain, and does not, of itself, indicate the voter's intention.

3. SAME—*when affidavits of voters are admissible.* On application for leave to file an information in the nature of *quo warranto,* where it is claimed that the township high school election complained of was void because the ballot was so printed as to be ambiguous and uncertain, the court may consider the affidavits of the voters themselves as to how they understood and marked the ballot and how they intended to vote and the affidavits of the judges of the election as to how the marked ballots were understood and counted by them.

4. QUO WARRANTO—*when leave to file information is properly denied.* Leave to file an information in the nature of *quo warranto* attacking the legality of an election declared to be in favor of establishing a township high school is properly denied, even though the ballot is ambiguous in its wording, where more than a majority of the ballots cast are shown by the affidavits of the voters and the election judges to have been cast in favor of the proposition, ·counting as against the proposition all persons shown to have been misled by the uncertain wording of the ballot.

CARTWRIGHT, J., dissenting; CARTER, J., specially concurring.

APPEAL from the Circuit Court of McDonough county; the Hon. R. J. GRIER, Judge, presiding.

This proceeding was instituted by the State's attorney of McDonough county in the name of the People of the State of Illinois, on the relation of John A. Black, George N. Runkle and James A. Butcher, by petition to the circuit court for leave to file an information in the nature of *quo warranto* against T. D. Sullivan, O. V. Beaver, W. H. Willey, W. R. Clawson and J. F. Lawyer. The petition alleged that the relators were residents, legal voters and taxpayers in township 4, north, range 2, west of the fourth principal meridian, McDonough county, Illinois; that said Sullivan, Beaver, Willey, Clawson and Lawyer were then, and for more than ninety days last past had been, without any warrant, title or right whatever, holding and executing the office of members of the board of education of the township high school in said town and were discharging the duties of directors of schools in and for said town, contrary to the statutes in such cases made and provided. The petition alleged that on the 20th day of March, 1909, a petition for the establishment of a high school in said township was presented to the township treasurer of said town, praying for the submission to the legal voters of said township of the question of establishing a township high school therein and that an election be called in accordance with law for that purpose; that an election pursuant to the prayer

247—12

of the petition was ordered to be held on the 6th day of April, 1909, and notice given that said election would be held for the purpose of voting for or against the establishment of a high school in said township. The petition further alleges that at said election a ballot was furnished for the voters which was in the following form:

| For or Against establishing a Township High School for the benefit of Township 4, North, ·Range 2, West. | Yes | |
|---|---|---|
| | No | |

J. W. FLACK, *Township Clerk.*

and that no other form of ballot was furnished to·or used by the voters and voted at said election. The petition alleges that said ballot was uncertain, ambiguous and misleading, and tended to, and did, confuse and deceive the voters; that many voters desiring to vote against the establishment of the high school placed a cross or other mark in the space following the word "yes" on said ballot, and voted the ballot, thus marked, at said election; that many voters who attended the said election and desired to vote against the establishment of a township high school were unable to determine from the ballot in what manner it should be marked to express a vote against the proposition and for that reason did not vote at said election. The petition alleges that on the day said election was held there were in the township more than 440 legal voters; that 334 ballots were cast, and that all of them were void for the reason that they were uncertain, ambiguous, misleading and confused and deceived the voters who voted them; that the returns of said election show that 252 of the ballots cast were counted in favor of establishing a township high school and that 82 of them were counted against the proposition. The petition alleges that by reason of the ballots being uncertain, ambiguous and misleading they could

not be legally counted for or against the proposition of establishing a township high school. The petition further alleges that afterwards a pretended election was held for the purpose of electing a township high school board of education, consisting of five members, at which said Sullivan, Beaver, Clawson, Willey and Lawyer claimed to have been elected, and said pretended board is attempting to issue bonds against said pretended high school district in the sum of $15,000 and have attempted to levy a tax for educational purposes in the sum of $2000. The petition alleges that by reason of the fact that the election to vote on the proposition of establishing a township high school was illegal and void no such school or school district was established and the pretended election of members of the board of education for said pretended township high school district was illegal and void.

Notice was served on respondents August 30, 1909, that application would be made to the court on the 20th day of September, 1909, which was the first day of the term of said court, for leave to file an information. On the 6th day of October, 1909, the court, of its own motion, entered a rule against respondents to show cause why leave should not be granted to file the information. In answer to the rule respondents filed the affidavits of 180 of the voters who had voted at the election for the establishment of a township high school, stating, in substance, that they voted "yes" by making a cross after the word "yes" as printed on the ballot, and that they understood by so voting that they were voting for the establishment of a township high school, and that if it was desired to vote against the establishment of said township high school the cross should have been made after the word "no" as printed on the ballot. They also filed the affidavits of two of the judges of said election, stating that ballots marked with a cross opposite the word "yes" were counted for the establishment of the township high school and those voted by making

a cross opposite the word "no" were counted against the proposition. A motion by petitioners to strike all these affidavits from the files was overruled except as to the affidavit of respondent O. V. Beaver and part of the affidavit of one of the judges of the election. The petition was supported by an affidavit of one legal voter of said township, who stated he desired to vote against the establishment of a township high school and marked his ballot by placing a cross after the word "yes," and also wrote opposite the word "yes" the word "against," for the purpose of making it clear how he desired to vote. The affidavits of three other legal voters stated they desired to vote against the establishment of a township high school but were unable to determine from the ballot how to mark the same to express their intention and for that reason did not vote at all. Upon this showing of the respective parties the court refused leave to file the information and dismissed the petition, and petitioners have prosecuted an appeal to this court.

W. H. STEAD, Attorney General, and T. H. MILLER, State's Attorney, (ELTING & HAINLINE, and TUNNICLIFF & GUMBART, of counsel,) for appellants.

FLACK & LAWYER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The decision of this case depends upon whether the election for the establishment of the township high school was a legal election. Appellants insist that the election was illegal on account of the form of the ballot used. Both parties agree that the election was not required to be held under the Australian Ballot law, and no official ballot was therefore required to be provided by the officers having charge of the calling and holding of an election. It is contended, however, by appellants that no other ballot than

the one in the form set out in the statement preceding this opinion was used by any of the voters at said election; that this ballot was provided by the authorities calling the election, to which was appended the name of the township clerk, and the voters were therefore led to understand and believe that the ballot so prepared was the ballot required to be voted by those who wished to vote at said election. If the decision of the case depended alone upon whether the ballot as prepared and voted is ambiguous and misleading we would be disposed to hold that the election was not a valid election. While the voters were required to vote upon the proposition for or against the establishment of a township high school, the ballot was required to be in such form as to show, with reasonable certainty at least, how the voter intended to vote upon the proposition. It does not appear by any means clear that by making a cross after the word "yes" on the ballot as here prepared the voter intended to vote for the establishment of the school. In effect it was the same as submitting the question, in the form of an interrogatory, as to whether the voters were for or against the establishment of the school. A vote "yes" would indicate that the voter was for or against it, but which would not very clearly appear. A vote "no" would indicate that he was neither for nor against the establishment of the school, and would fall short of being a vote against its establishment in the form in which the question was submitted. If the ballot had been prepared "For the establishment of a Township High School" and "Against the establishment of a Township High School," and a square had been left after each proposition, in which the voter could indicate by a cross how he voted upon the question, it would have been free from ambiguity. While the law did not require that the ballot should be prepared in the form suggested, it should have been so prepared, whether furnished by the election officers or provided by the voters themselves, that it would not be uncertain and

ambiguous, but would indicate with reasonable certainty how each voter intended his ballot to be counted.

To explain how the voters understood the ballot should be marked to vote "for" or "against" the proposition and how they intended their votes should be counted, respondents presented affidavits of 180 of them, that being more than half of the voters who voted at said election. These affidavits stated that the affiants favored and intended to vote for the establishment of a township high school; that they understood a cross in the square after the word "yes" was a vote for establishing the school and a cross after the word "no" was a vote against it, and that they made a cross in the square after the word "yes," meaning and intending thereby to vote for the establishment of a township high school. Appellants contend that these affidavits were not competent to be considered by the court and should have been stricken from the files; that the proposition voted upon should have been stated in such clear and unmistakable terms as to remove all ambiguity and uncertainty, so that the voter would understand how to express his intention and so that it would clearly appear from the ballot how each voter intended to vote, and *Harvey* v. *Cook County,* 221 Ill. 76, is relied on to support that contention. In that case there was no question of the competency of evidence to explain the intention of the voter. The form of ballot to be used in the election contested in that case was provided by the statute. A ballot prepared in the form prescribed would have been clear and unambiguous, and the voter could not have failed to understand how to mark his ballot so as to give effect to his intention. By the addition to the ballot, as prepared and voted at the election, of the words "yes" and "no," which were not prescribed by the statute, its meaning was so changed that a voter desiring to vote against the proposition submitted could not do so by voting "no." A ballot so marked, it was held, would indicate that the voter was not against the proposition,

while a ballot marked to show the voter voted "yes" was clearly a vote in favor of the proposition, and the court said: "There was no clear and unmistakable way of voting against this proposition. Fairness and equal opportunity to all voters to express their choice required that a vote in the negative could be as clearly and certainly indicated as could a vote in the affirmative." In the case now under consideration the ballot gave no advantage to either side of the proposition. Literally, a ballot marked "yes" indicated the voter was for or against the proposition, while a ballot marked "no" indicated that the voter was neither for nor against the proposition submitted. Notwithstanding that literal meaning, a majority of all those who voted at the election made affidavit that they understood a vote "yes" meant a vote to establish a township high school and that they voted accordingly, intending their votes to be counted in favor of the proposition. They were not deceived or misled nor prevented from voting. Appellants presented the affidavits of three voters that they were opposed to establishing a high school, but being unable to determine how to mark the ballot to express their intention they did not vote. If it was competent for respondents to show by the voters the matters set up in the affidavits filed by them, on the showing made the court was justified in refusing leave to file the information. We are of opinion the principles announced in *McKinnon* v. *People,* 110 Ill. 305, and *Behrensmeyer* v. *Kreitz,* 135 id. 591, sustain the competency of the affidavits to be considered by the court in passing upon the motion for leave to file the information.

It appears from the petition that at the election held for the purpose of voting on the question 334 votes were cast, and 252 of the ballots were marked with a cross in the square after the word "yes" and 82 after the word "no." Ballots marked with a cross after the word "yes" were counted for the establishment of a township high

school and those marked "no" against it. The 180 voters who made the affidavits constituted a majority of all those who voted at the election, and it is not shown that there were more than three voters who did not vote because they did not know how to mark the ballot. The voters were not restricted to the ballot prepared by the election officers. If they did not know how to mark it they were at liberty to prepare a ballot in such form as to express their sentiment upon the proposition submitted. The ruling of the court in considering the affidavits was justified by the authorities above cited and was in the interest of justice, as it gave effect to the will of the voters. Doubtless cases may arise where it would not be proper to consider the testimony of voters as to what they intended, but such is not this case. Whether leave shall be granted to file an information in the nature of *quo warranto* is in a large measure within the sound discretion of the court. Such discretion, however, is not to be exercised arbitrarily but in accordance with principles of law. *People* v. *Town of Thornton,* 186 Ill. 162; *People* v. *North Chicago Railway Co.* 88 id. 537; *People* v. *Waite,* 70 id. 25.

We think there was no abuse of discretion in denying leave to file the information in this case, and the judgment of the circuit court is affirmed.          *Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, dissenting.

Mr. JUSTICE CARTER: I concur in the conclusion reached in the foregoing opinion, but I do not think that the affidavits of the voters were admissible in evidence to show the meaning they placed upon the ballot in question.